1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9              FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   MILORAD OLIC,                          No.  2:14-cv-2120 KJM GGH P
12                 Petitioner,
13          v.
14   WARDEN JOE A. LIZARRAGA,               FINDINGS AND RECOMMENDATIONS
15                 Respondent.
16
17

18   INTRODUCTION AND BACKGROUND

19          Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus

20   pursuant to 28 U.S.C. § 2254.  On February 9, 2016, the district court declined to adopt this

21   court's findings and recommendations recommending dismissal for failure to oppose

22   respondent's motion to dismiss, giving petitioner an opportunity to prosecute this action based on

23   petitioner's January 4, 2016 filing which the court construed as an "overdue opposition."  The

24   court ordered respondent to file a reply, and referred the motion to this court to decide it on the

25   merits.  Having reviewed the motion, opposition and reply, this court now issues the following

26   findings and recommendations.

27          This action is proceeding on the amended petition, filed March 26, 2015.  Petitioner's

28
                                          1

1  claim is that his Fourth and Eighth Amendment rights were violated by random urinalysis testing

2  as part of a mandatory standardized drug testing program, with which he refused to comply,

3  resulting in a prison disciplinary and mandatory weekly drug testing for one year, with resulting

4  thirty days loss of credits for every time that petitioner refuses testing.  Petitioner claims he was

5  improperly selected for random drug testing because he has never used drugs, never been charged

6  with a drug related offense, and never been suspected of using drugs.  (ECF No. 18 at 8.)  It

7  appears that petitioner refused to submit to random testing on numerous occasions over a period

8  between February and November, 2014.  (Id. at 37-66.)

9       Respondent moves to dismiss for failure to state a claim, contending specifically that the

10  claims are based on an alleged violation of state law, and that expungement of the disciplinary

11  charges will not necessarily spell speedier release.

12  DISCUSSION

13       I.  To Grant Petitioner's Claim Would Not Necessarily Spell Speedier Release

14       When a state prisoner challenges the legality or duration of his custody and the relief he

15  seeks is an order for earlier or immediate release, the prisoner has stated a claim for habeas relief

16  under 28 U.S.C. § 2254.  See Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827 (1973).  In

17  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir.1989), the Ninth Circuit held that expungement

18  of a prison disciplinary conviction is an available form of federal habeas relief if "expungement is

19  *likely* to accelerate the prisoner's eligibility for parole." (Emphasis added.)  Then, in Ramirez v.

20  Galaza, 334 F.3d 850, 859 (9th Cir.2003), the Ninth Circuit appeared to shift the standard, stating

21  that a prisoner had no habeas claim for expungement of a disciplinary conviction if "a successful

22  challenge ... *will not necessarily* shorten the prisoner's sentence." (Emphasis added.)  However,

23  the following year, the Ninth Circuit held that there is a cognizable habeas claim if the outcome

24  "*could potentially affect* the duration of the prisoner's confinement."  Docken v. Chase, 393 F.3d

25  1024, 1031 (9th Cir.2004) (emphasis added).  District Courts within the Ninth Circuit and even

26  different judges in this district have then understandably disagreed whether, under various

27  circumstances, habeas jurisdiction depends on whether a successful challenge to a prison

28  disciplinary violation "necessarily" accelerates parole eligibility, is "likely" to accelerate it, or

1  "could potentially affect" how long the petitioner stays in prison.  See, e.g., Birdwell v. Martel,

2  No. CIV S–10–2523 LKK EFB P, 2012 WL 761914 at *3 (E.D.Cal. Mar.7, 2012) (comparing

3  contradictory cases).[1]  The Ninth Circuit recently acknowledged that "[w]e have not made clear ...

4  whether a claim has to necessarily, likely, or merely potentially accelerate release from

5  confinement to be cognizable in habeas."  Nettles v. Grounds, 788 F.3d 992, 1000 (9th

6  Cir.2015).[2]  After examining the Supreme Court's decision in Skinner v. Switzer, 562 U.S. 521,

7  131 S.Ct. 1289 (2011), the Ninth Circuit clarified that "in cases involving challenges to prison

8  disciplinary proceedings, the writ of habeas corpus extends only to claims that, if successful, will

9  'necessarily spell speedier release.'"  Nettles, 788 F.3d at 1001 (quoting Skinner, 562 U.S. at

10  535).  "Speedier release from custody" in this context "would include termination of custody,

11  acceleration of the future date of release from custody, or reduction of the level of custody."  Id.

12  However, Ninth Circuit rules, and the order granting en banc review preclude the citation as

13  precedent of panel decisions taken for such review as authority in a case.  See Nettles v. Grounds,

14  810 F.3d 1138 (9th Cir. 2016) (granting review).  Nevertheless, the undersigned is not precluded

15  in finding the Nettles decision at this time persuasive in determining the correct outcome in this

16  case, and an outcome needs to be had.

17       In this case, the court finds that expunging petitioner's prison disciplinary conviction

18  would not necessarily lead to his speedier release from prison.  Because petitioner is serving an

19  indeterminate sentence of thirteen years to life, under Nettles, 788 F.3d at 1000, an order restoring

20  thirty days of behavior credits is too speculative to meet the standard set forth in Skinner, 562

21  ////

22  ////

23  ////

24  _____

25  [1]  The undersigned has also been perplexed pre-Nettles, see text, by what authority to choose in this respect.  See Brodheim v. Dickinson, 2013 WL 4541742 (E.D. Cal. 2013) (choosing to use

26  the "middle ground" of Docken); Bailey v. Swarthout, 2011 WL 4056051 (E.D. Cal. 2011).
   [2]  The court takes judicial notice of the Ninth Circuit's order granting rehearing en banc in

27  Nettles.  Nettles v. Grounds, 810 F.3d 1138 (9th Cir. Jan. 20, 2016).  A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986);

28  United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

1   U.S. 521.[3]  See Velazquez v. Gibson, 2015 WL 8534535, at *2 (C.D. Cal. Nov. 10, 2015)

2   (finding restoration of 360 days loss of credit would not necessarily affect release date); San

3   Nicolas v. McDowell, 2015 WL 7731397, at *2 (C.D. Cal. Oct. 27, 2015) (180 days of good time

4   credit too attenuated); Stephen v. Davis, 2015 WL 6093101, at *2 (N.D. Cal. Oct. 16, 2015) (150

5   day loss of good conduct time credits).

6          The possibility of repetition of disciplinary credit loss makes no difference to the

7   outcome.

8                  [R]egardless of whether [plaintiff] lost 90 days or 360 days of
                   credits as a result of the rule violation report, [plaintiff] is in the
9                  same situation as the Nettles plaintiff: he is an indeterminately
                   sentenced prisoner not yet found suitable for parole and for whom a
10                 base term has not yet been set.  It cannot be said that the removal of
                   the rule violation report or the restoration of time credits will
11                 necessarily result in an earlier release date for [plaintiff].

12  Pratt v. Hedrick, 2015 WL 3880383, at *3 (N.D. Cal. June 23, 2015) (footnote omitted).  See also

13  McKinney v. Hedgpeth, 2015 WL 6167517, at *2 (E.D. Cal. Oct. 20, 2015) (since petitioner may

14  never be found eligible for parole on other grounds, and it is unknown how long he will serve

15  before the Board finds him eligible for parole, if ever, the effect of restoration of his credits on the

16  duration of his confinement is too speculative).

17         As in Nettles, petitioner's indeterminate sentence bears on this finding: this court could

18

19  ───────────────
    [3]  Even if petitioner were to lose thirty days of behavior credits every time he refuses to submit to
    drug testing, as he has stated he intends to do, an order restoring a greater number of credits is
20  equally speculative.

21                 In Sandin, the U.S. Supreme Court concluded that a possible loss of
                   credits due to a disciplinary conviction was insufficient to give rise
22                 to a liberty interest where "[n]othing in [the State's] code requires
                   the parole board to deny parole in the face of a misconduct record
23                 or to grant parole in its absence, even though misconduct is by
                   regulation a relevant consideration." Sandin, 515 U.S. at 487. The
24                 Court went on to note that "[t]he decision to release a prisoner rests
                   on a myriad of considerations," and an inmate is generally
25                 "afforded procedural protection at this parole hearing in order to
                   explain the circumstances behind his misconduct record." Id. at
26                 487. The Court held that "[t]he chance that a finding of misconduct
                   will alter the balance is simply too attenuated to invoke the
27                 procedural guarantees of the Due Process Clause." Id.

28  Madrid v. Sherman, 2016 WL 279111, at *2 (E.D. Cal. Jan. 22, 2016) (emphasis in original).

                                              4

1   only speculate what effect, if any, a prison rules violation conviction suffered in 2014, with

2   petitioner only three years into an indeterminate sentence of thirteen years to life imprisonment,

3   will have on his possible parole eligibility in the distant future.  Based on the standard announced

4   by the Supreme Court in Skinner and adopted by the Ninth Circuit in Nettles, the undersigned

5   finds that petitioner has not stated any cognizable federal habeas claim, and recommends that the

6   petition be dismissed.

7          II. Alleged Violation of State Law

8          For the sake of argument, assuming there is habeas corpus jurisdiction for some reason, or

9   in the event that this action could be re-characterized as a Civil Rights action, the court addresses

10   respondent's second argument.  Respondent asserts that the requirement of mandatory urine

11   samples for presence of drugs or alcohol is governed by state law, and petitioner is actually

12   challenging an error of state law which cannot be re-characterized as a Fourth Amendment

13   violation.

14          A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some

15   transgression of federal law binding on the state courts.  Middleton v. Cupp, 768 F.2d 1083, 1085

16   (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is unavailable for

17   alleged error in the interpretation or application of state law.  Middleton v. Cupp, 768 F.2d at

18   1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786

19   F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.

20   Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).

21          The Supreme Court has reiterated the standards of review for a federal habeas court.

22   Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1991).  In Estelle v. McGuire, the Supreme

23   Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted

24   federal habeas relief.  The Court held that the Ninth Circuit erred in concluding that the evidence

25   was incorrectly admitted under state law since, "it is not the province of a federal habeas court to

26   reexamine state court determinations on state law questions."  Id. at 67-68, 112 S. Ct. at 480.  The

27   Court re-emphasized that "federal habeas corpus relief does not lie for error in state law."  Id. at

28   67, 112 S. Ct. at 480, citing Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 3102 (1990), and

Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75 (1984) (federal courts may not grant habeas relief where the sole ground presented involves a perceived error of state law, unless said error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses of the Fourteenth Amendment).

The Supreme Court further noted that the standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." Id. at 68, 112 S. Ct. at 480.  The Court also stated that in order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness," Id. at 73, 112 S. Ct. at 482, and that "we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'"  Id. at 73, 112 S. Ct. at 482.  As more recently re-emphasized by the Supreme Court, "'a mere error of state law ... is not a denial of due process.'"  Rivera v. Illinois, 556 U.S. 148, 129 S. Ct. 1446, 1454 (2009) (quoting Engle v. Isaac, 456 107, 121, n. 21, 102 S. Ct. 1558 [] (1982)).  A petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).  "[A] mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas." Gilmore v. Taylor, 508 U.S. 333, 348-49, 113 S.Ct. 2112, 2121 (1993).

Petitioner's claim that his punishment for refusing drug testing is unfair, alleges only a state law violation.  The testing provision and punishment are set forth in Cal. Code Regs. Tit. 15, § 3290 which provides in part:

> (c) The securing of a urine sample from an inmate, for the purpose of testing for the presence of controlled substances or for use of alcohol may be done for the following reasons:
>
> …
>
> (4) The inmate is selected by the department's mandatory standardized random drug testing selection process.
>
> …
>
> (d) Inmates must provide a urine sample when ordered to do so pursuant to these regulations, for the purpose of testing for the presence of controlled substances or the use of alcohol.

1  Refusal to submit to testing for drugs or alcohol is a serious rule violation, and a Division F

2  offense, resulting in credit forfeiture of 0-30 days.  Cal. Code Regs. Tit. 15, § 3315(a)(3)(R),

3  3323(h)(5).

4       Petitioner basically contends that he was unfairly penalized for refusing to submit to

5  random drug testing as required by these regulations; however, federal habeas corpus relief does

6  not lie for violations of state regulations.  To the extent petitioner's argument is procedural,

7  failure to follow California's administrative regulations is an error of state law not cognizable on

8  habeas review in the federal courts.  Vasquez v. Gonzalez, 2010 WL 503028, at *8 (C.D. Cal.

9  Feb. 4, 2010).  The California Superior Court interpreted its own state laws, and found that the

10  CDCR's drug testing policy did not violate the constitution.  (ECF No. 18 at 32-33) (finding that

11  petitioner failed to show regulation requiring random drug testing was unduly burdensome, met

12  no legitimate penological objective, or that it was arbitrarily applied).  Since a federal court on

13  federal habeas review cannot challenge a state court's interpretation of state law, petitioner's

14  claim based on state law is not cognizable in this federal court.

15       In order for petitioner's claim to succeed, it must rise to the level of a substantive

16  constitutional violation.  The Ninth Circuit has found that urine testing for drugs in prisons is

17  reasonably related to the prison officials' legitimate penological interest in keeping drugs out of

18  prison.  Thompson v. Souza, 111 F.3d 694, 702 (9th Cir. 1997) (finding that even non-random

19  testing is permissible).  Petitioner's claim that urine testing violates the Fourth Amendment has

20  been rejected by the Ninth Circuit.  Id. at 702.  See also Maldanodo v. Yates, 2013 WL 2457479

21  (E.D. Cal. 2013).  Therefore, petitioner's claim that he is being punished by being forced to

22  submit to weekly drug testing for a year, or lose thirty days of credits each time he refuses, is not

23  so egregious as to violate the Fourth Amendment. [4]

24       In regard to his Eighth Amendment claim that random drug testing every week as well as

25  loss of thirty days of behavior credits every week is disproportionate punishment, such claims

26

---

27  [4]  Because the Fourth Amendment encompasses petitioner's claim, no claim for substantive due
process will lie.  Albright v. Oliver, 510 U.S. 266, 273 (1994) citing Graham v. Connor, 490 U.S.

28  386, 395 (1989).

1    have also been rejected by district courts in the Ninth Circuit.  See Cruz-Tercero v. Banks, 2012

2    WL 3155552, at *6 (C.D. Cal. May 29, 2012) (finding disallowance of 27 days of good conduct

3    time, or 27 additional days of incarceration not disproportionate to 80 month sentence); Cole v.

4    Sisto, 2010 WL 2303257, at *2 (E.D. Cal. June 7, 2010) (claim that forfeiture of time credits,

5    addition of points to classification score, or temporary loss of yard or canteen privileges violated

6    Eighth Amendment was "plainly frivolous"); Brown v. Cate, 2010 WL 2132305, at *3 (S.D. Cal.

7    Apr. 23, 2010) (good time credits do not affect length of sentence but only when prisoner can be

8    released on parole, so claim that prison failed to restore such credits does not state a claim under

9    Eighth Amendment);  Jones v. Schriro, 2009 WL 775384, at *11 n. 1 (D. Az. Mar. 20, 2009) (in

10   order for Eighth Amendment violation to occur, sentence must be "grossly disproportionate" to

11   crime).  Cf. Harmelin v. Michigan, 501 U.S. 957, 959 (1991) (Eighth Amendment "forbids only

12   extreme sentences that are grossly disproportionate to the crime," and finding no violation for

13   sentence of life without possibility of parole for possessing large amount of drugs); Hinkley v.

14   Warner, 616 Fed. Appx. 255, 2015 WL 5172870 at *1 (9th Cir. Sept. 4, 2015) (in civil rights

15   context, no liability for random urinalysis testing unless prison official knows of and disregards

16   substantial risk of harm to prisoner).  Petitioner's Eighth Amendment claim has no merit.

17   CONCLUSION

18          Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must

19   issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A

20   certificate of appealability may issue only "if the applicant has made a substantial showing of the

21   denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in these

22   findings and recommendations, a substantial showing of the denial of a constitutional right has

23   not been made in this case.

24          For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

25          1.  Respondent's motion to dismiss, filed July 17, 2015 (ECF No. 32), be granted;

26          2.  This action be dismissed; and

27          3.  The District Court decline to issue a certificate of appealability.

28          These findings and recommendations are submitted to the United States District Judge

1 | assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen

2 | (14) days after being served with these findings and recommendations, any party may file written

3 | objections with the court and serve a copy on all parties.  Such a document should be captioned

4 | "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

5 | shall be served and filed within seven (7) days after service of the objections.  The parties are

6 | advised that failure to file objections within the specified time may waive the right to appeal the

7 | District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

8 | Dated: March 21, 2016

9 | /s/ Gregory G. Hollows

10 | UNITED STATES MAGISTRATE JUDGE

12 | GGH:076/Olic2120.mtd

9